KALAMAZOO CITY SAVINGS BANK *v.* DONOVAN.

1. FRAUDULENT CONVEYANCES—PRIMA FACIE CASE CASTS BURDEN OF PROOF ON GRANTEE.
   Where, in a suit begun by filing a bill in aid of execution, under Comp. Laws Supp. 1922, § 12897, a *prima facie* case is made, the burden of proof is on the grantee to show that he is a good-faith purchaser.

2. SAME—EVIDENCE—BURDEN OF PROOF NOT MET.
   Where the evidence clearly shows that the conveyance of a farm by a debtor to his brother was an attempt to defraud his creditors, and the testimony in favor of the grantee is contradictory and unsatisfactory and fails to meet the burden of proof cast upon him by the statute to show that he is a good-faith purchaser, the decree of the court below setting aside the deed as in fraud of creditors is affirmed, on appeal.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted January 12, 1927.    (Docket No. 68.)    Decided April 1, 1927.

Bill in aid of execution by the Kalamazoo City Savings Bank against Bartholomew Donovan and another. From a decree for plaintiff, defendants appeal. Affirmed.

*Robert Cavanaugh* and *David Anderson,* for plaintiff.

*W. J. Barnard,* for defendants.

FELLOWS, J.    This is a bill filed in aid of execution. Defendant Bartholomew Donovan was a substantial farmer, owning nearly 200 acres of land in Van Buren county.    It was free of incumbrances and worth

[1]Fraudulent Conveyances, 27 C. J. § 715; [2]Appeal and Error, 4 C. J. § 2869.

$15,000.    He became interested in the Beattie-Decker Pickle Company, and with others indorsed considerable of its paper.    The pickle company proved a losing venture.    Plaintiff bank held some of such paper so indorsed, and recovered judgment thereon against Bartholomew and others for upwards of $11,000.    The West Michigan Savings Bank of Bangor held similar paper and recovered judgment prior to plaintiff's judgment for substantially $6,000.    It had levied on property of the pickle company and the farm of Bartholomew.    On the day the sale was to have been made under this levy, for some reason defendant Andrew, brother of Bartholomew, whose home was in Chicago, was at Bartholomew's home.    Arrangements had been made but had not been fully completed to take care of the Bangor bank's claim without resorting to Bartholomew's land.    On this day Bartholomew borrowed of Samuel Smiley and wife $6,500 and gave them a mortgage on the land for this sum. He also borrowed of the Olney bank $3,000 and gave them a mortgage on his farm for this amount.    Defendants claim that on this day he sold his equity in the farm to his brother for $5,500, who on this day gave him a check for that amount on the Drexel State Bank of Chicago, and a deed of the farm bearing this date was later sent to Andrew in Chicago, and he recorded the same prior to the recovery of judgment by plaintiff.    This left Bartholomew execution proof. He got cash ($6,500) from the Smileys, cash ($3,000) from the Olney bank, and claims he got cash ($5,500) on his brother's check, traveled for a time in Europe, and finally settled in California, where he now resides. The arrangements to take care of the Bangor bank's claim were eventually carried out, and upon a hearing of this case the trial judge set aside the deed to Andrew as being in fraud of plaintiff as a creditor of Bartholomew.

There were two hearings held in the court below. Plaintiff made its case under section 12897, Comp. Laws Supp. 1922, and defendant Andrew alone gave testimony on the first hearing on behalf of defendants. On the second hearing he was also a witness, and the deposition of Bartholomew, taken in California, was also read. Some other testimony was also introduced by both parties. That Bartholomew converted his property into cash and left the country to defraud his creditors is too patent to require discussion, and the testimony of Andrew is not at all convincing that he was a purchaser in good faith. The burden under the statute was upon him, and we are satisfied he has failed to discharge it. The testimony given on behalf of defendants is not convincing that the transaction was a *bona fide* one. The check given by Andrew to Bartholomew bore date September 9, 1922. The Bangor bank's levy was not then released nor was the deed then delivered. Bartholomew, who then had in his possession $9,500 in cash received from the Smileys and the Olney bank, testified that he took the check to Chicago, had it certified on the 11th, and cashed on the 12th. Both brothers say they did not see each other on the occasion of this trip. When Andrew was over here on the 9th he knew or learned of the difficulties which had befallen the pickle company; knew of the levy by the Bangor bank on his brother's farm; knew that his brother that day obtained $9,500 in cash by mortgaging his farm, and it is difficult to believe that he did not learn of other obligations of his brother. He was a lawyer by profession, and must have known that the conveyance to him stripped his brother of all property liable to execution. On cross-examination he was quite severely pressed upon the question of the state of his account at the Drexel State Bank of Chicago. He protested that it was his private affair, but ad-

mitted he had his monthly statements at his office in Chicago, and it was finally understood they should be sent to the clerk or the testimony of a bank official be taken.    Neither was done before the second hearing, and at that hearing he testified that he could not find the statements, that they had been destroyed, and made a feeble effort to account for the failure to take the testimony.    Both Bartholomew and Andrew gave testimony in direct conflict with that given by the late Thomas J. Cavanaugh of Paw Paw, an attorney of the highest standing and unquestioned probity, and the testimony of both was vacillating, self-contradictory, and unsatisfactory.    It would not profit any one to detail its inconsistencies.    The trial judge heard and saw defendant Andrew on the stand, and concluded he was not a good-faith purchaser.    We have no disposition to disturb his conclusion.

The decree will be affirmed.    But defendants may have 30 days from the filing of this opinion to pay the judgment.    Plaintiff will have costs of this court.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.